So we'll call case number 16-30339, Norris v. Causey. And I would ask, with no disrespect to the parties involved, that we use first names so we know if we're talking about Josh or Jill Norris, and we're talking about Garry or Garry Causey. And it's not meant to be disrespectful to the party's concern, but that will make it clearer. Mr. Higgins? Yes, Your Honor. May it please the Court, Ryan Higgins on behalf of Garry Causey, that's Garry with a K. Garry is an appellant, a cross-appellee, and an appellee in this case. I only have about seven minutes, so I'm going to try to jump right to the issues as they relate to Garry. Number one is whether Garry tacitly accepted the joint venture agreement at issue. And number two is whether the Norris' lacked standing to assert their claims under the joint venture agreement due to their bankruptcy filing and the failure to properly schedule these claims that are asserted in this action. I'm very unclear on the effect of the bankruptcy court reopening the Causey bankruptcy. What practical and or legal effect does that have on us? Well, Your Honor, I would say that it doesn't really matter because the effect is when the claims were not scheduled, what really matters is that this is an abandonment under 554C of the United States Code. That right there is what legally matters in this case. The claims could not be abandoned by the trustee because they were never properly scheduled. So the fact that it was reopened, I think what Judge Barbier stated, is essentially use it as evidence to look at what that court and what the trustee thought about whether the Norris' were candid and had fully disclosed the value of the claim to the trustee. So I think it goes to— But should we wait for that? Because a bankruptcy court could reopen and go, well, they did disclose it even though they didn't quite fill out the right form and it was abandoned fairly well. Or they could go, oh my gosh, this was a major fraud. This is terrible. We need to undo a bunch of stuff. And wouldn't those two situations have an effect on us? Well, that was certainly a situation that we were in when we filed the motions for relief from judgment with the district court, not really knowing what the bankruptcy court intended to do. And I don't believe that they've moved any further since then. By operation of law, under 554C, if the claim was not properly scheduled in the case, it could not revert back to the debtors. It remains property of the bankruptcy estate. Do we know anything about where that $1,000 valuation, which I think everyone acknowledges was wrong, where that came from? How the trustee arrived at that valuation? There's a lot of confusion there, and I think, I mean, it's telling the fact that the Norses can't even, Josh and Jill can't even tell the court how that came about. But that would have to be supplied. I think what opposing counsel suggests is it was supplied at a meeting of the creditors possibly or supplied by the bankruptcy counsel to the trustee at some point after they'd already filed their schedules and amended schedules. I mean, it just seems to me the bankruptcy court is in the position to know whether it and or the trustee were misled. Do you have any cases, a single case, where there's a bankruptcy and the trustee abandons a claim, and that gets blessed by the court, and yet another court, not a reviewing court of the bankruptcy, a separate court, I mean, we're talking about a court in Louisiana, the bankruptcies in Michigan, says, oh, no, we think because of things that were said that that abandonment was improper. I think that it has happened, but I don't believe we've cited a case on that point. But that would likely be under a 554A scenario, I believe. I mean, the law is very clear, and I think our opponents have tried to change. Well, the law is very clear. You can't misrepresent things to the bankruptcy court, but I don't think the law is clear at all that another court – I mean, so a court down here in Houston could say, oh, eight years ago in this bankruptcy, I've looked at it now, and I don't think this was fully disclosed, so I'm going to change that, undo that abandonment. That's your position. Well, I think that happens in cases like this where standing comes up. I think it happened in the Inouye Tennyson case that I cited in a Rule 28J letter, and I believe there's another case in my brief as well where that occurred, a very similar case. I believe it was Inouye Boudreaux, if I'm pronouncing that correctly, out of the Fifth Circuit, 981 Federal 2nd, 736. Because, I mean, the question is not going to be what do they tell the trustee about the claim and what are the value – that could be a consideration if it's under 554A, but when it's under 554C, the only question is whether it was properly listed in their bankruptcy schedule. See, I think all of this can come up, but it comes up under the rubric of judicial estoppel, which you mentioned in your reply brief, the Love, the Tyson Food, Cain sort of line of cases, and it doesn't look like that was at all asserted in the district court. So can we consider this line of cases that said even if you're the wrongdoing tortfeasor, if the plaintiff didn't disclose to the bankruptcy court, then the wrongdoing tortfeasor can still win as against the plaintiff, maybe not against the trustee. If that wasn't raised in the district court and I didn't see that it was, then can we even consider that? Well, I believe they can be considered, but it's very similar to the standing argument that was raised in the district court as well. Well, no, because it goes to the merits, and the standing argument goes to the ability to even bring the case, and to me it's a real party and interest question. If I'm 17 years old and I was injured in a car accident, I have standing to sue, but I'm not the right party to sue because my parents have to bring it, but I'm still the injured party, so I have standing because I was grievously injured in a car accident. I'm just not old enough to bring suit in my own name. So that's the difference between standing and real party and interest. The Norrises were injured. They just may not be the right person to bring the claim, or they were allegedly injured, let's say. Correct, and the Enright Tennyson case as well that I cited addressed judicial estoppel, and I think the Enright Coastal Plains case out of the Fifth Circuit discusses the standard, and I believe under those holdings it can be raised now. But you only raised this whole issue of the bankruptcy, right? It comes up. I mean, I know your client, unlike the other defendant, was there at trial, but the issue of the Norrises' bankruptcy court conduct comes up only in the Rule 60 motion, correct? That is correct, Your Honor. Okay, so if it's real party and interest, which is what the district court found, the rules say real party and interest is waivable, so that can't go to subject matter jurisdiction, right? I think this is analyzed under, I mean, all the courts that have addressed this have analyzed this type of issue. I don't believe that any distinction between standing and real party and interest would preclude my client from raising this argument for the first time on appeal. But what about estoppel? Is there any argument that judicial estoppel goes to a court's subject matter jurisdiction? I mean, Rule 60 is very limited because it's a post-judgment attack, and the rule says you can attack personal jurisdiction, which is your co-defendant service argument. You can attack subject matter jurisdiction in a complete denial of due process. Where would these fit into those limited categories? Well, Your Honor, I see that I'm out of time, but I'll save some time for rebuttal. But, I mean, the way that we've viewed this is judicial estoppel is an alternative argument, and standing and— You think that the court had no jurisdiction, not just that the other party was misrepresenting things, taking inconsistent positions. Correct. I mean, the district court in this case is the court that issued the judgment and has to have the authority to determine whether the parties who the judgment is in favor of is the proper party or not. And courts all the time look at a bankruptcy situation from another court, just like the district court did here, in reaching determination whether a claim was properly scheduled and whether those plaintiffs actually had standing or the proper parties to assert the claim. But I'll attempt to address any further questions on rebuttal. Thank you. You saved time for rebuttal. Mr. Richardson? Your Honors, in my limited time, I'm going to address one issue, which is that my client, Gary, with a G, was not properly served. He wasn't personally served. They attempted substituted service, and they violated the rules for two reasons. First, they did not serve where he currently lived and instead served at the New Mexico house he had not lived with his wife for almost five years. And second, that they did not deliver to a person who lived with Gary who was of suitable age. On the first error, that he had not lived at the house in five years— and then there's some evidence that he only lived in Denver. And if it's factual, don't we have to defer to the district court? It's only if there's no evidence whatsoever to support the Albuquerque address that we don't defer, right? I specifically addressed that very argument in our reply brief. There's no finding by the district court that, as a matter of fact, Gary lived in New Mexico. Instead, what the opinion says is you can treat it as if he lived in New Mexico because the district court decided to apply what it called this brand-new exception that it made up, the outward appearances exception, which it took from an old case from 1972 from this court. And so it was purely a legal error. So do we need to remand for factual findings? Because it would seem like if we're going to imply findings, we imply them in support of the judgment, not against the judgment. There's no factual findings that he did, in fact, live in New Mexico. The only evidence in the record, in fact, is his affidavit saying he didn't live there, his wife agreeing that he didn't live in New Mexico. But I thought there was all this stuff about he filled out these tax forms and whatever that said that. His former employer, Southwest, still sent the W-2s to his hold address. Okay. I mean, so there's still—and I mean, you know, it does not appear that he's divorced from his wife or fixing to be. And so the fact that his wife still lives there, he's living in Denver because he's apparently a Southwest employee and that's a better place to be based. I mean, this doesn't seem like the typical I sold my house and Joe Blow that I don't even know is now living there and you're still trying to send me stuff there because once in a while somebody does send me something there and it gets forwarded. This is a little closer case, you would agree. The wife and kids are still in Albuquerque. He's still filling out forms that say Albuquerque, but he's living in Denver. There were two things that my opponent found where an attorney in New Orleans had said that he was still there. But remember, there's a rich body of case law on spouses separating and cases where you serve the husband but the wife is the defendant and she's moved or vice versa. And we've cited those cases. They have not been able to cite any case that said that you served the spouse when there's a separation and that's enough. Is there a separation? I mean, you're using a term that I think has a legal meaning. I mean, are they not together anymore? They don't live together. What the record said, I went through everything in the record, and what the record said is they have not lived together in almost five years. Okay, but I know of married couples that are very much in love that don't live together, and I know of married couples that live together and are not in love, and then there are people that separate but don't get a divorce, and it's a legal separation where they are not together anymore. Which one is this? If we were on Facebook, Your Honor, they might say it's complicated. They're not legally divorced, if that's what you're asking. Have they lived together in five years? In fact, more than five years now. No, they haven't. And that's the arrangement that they have. Whatever. But, again, there's a number of cases that deal with this very situation, and the district court got around it by saying that you can use the outward appearance test. But when this court adopted that test, not for a service rule, but for the National Labor Relations Act, there were three things it relied upon which don't exist here. You had a defendant trying to elude service, which there's no evidence of that here. You had the exception applying when all outward possible appearances were that the person was still at the house. And here that's not true. I mean, there's some things like the W-2 still going to the former address, but there's so much evidence. There was a sign on the house saying he's not here. The plaintiffs themselves represented to the magistrate judge, he's not at New Mexico anymore. Would you please let us take a deposition to find out where he is? And the magistrate judge said, you haven't done enough investigation to find where he is. And, in fact, they did find him. They found his condo in Denver. They knew he was based out of Denver. They just didn't happen to have a process server go there when he was there. So even if the district court was right on the all outward appearances test, these facts don't match that. And then, finally, in the Clark case, the Fifth Circuit said that the exception was justified because you read the National Labor Relations Act statute in a way to help unions, which is not the all here. In fact, the law is the opposite. Substituted service statutes are read strictly. They're read strictly, but then there's this issue of actual notice. And so the question to me, I can understand, and you say that it's complicated. You could have a not yet ex-spouse who hates you, who knowingly doesn't tell you about stuff you need to know. I could see that. But here everybody seems to be assuming Gary actually knew about this case and was just ignoring it. What does the record show on when and how Gary personally became aware of the case? I don't think he's yet been himself personally handed a summons or a citation. What does the record show about when he personally became aware of the case? There's only one thing in the record, Your Honor. It's about a page from the trial testimony where Cary is asked. In fact, it was the trial judge who interrupted the counsel so that the trial judge could ask Cary and said, does Gary know about this suit? And he says, well, he knows about it, and he tried to ask, y'all have talked about it, and he says, well, it's a sour subject. We don't really get into it. So there's a few questions that says he knows about it. But the settled law is that notice is not enough. We cited the case. Yeah, but the settled law is that we're to broadly construe Rule 4 when there is actual notice. But broadly construe does not mean break. In fact, most of the cases applying it deal with a defendant who's trying to hide from service. And so the court says, you know, if you drop it at its feet, that's close enough to handing it to him in his hand. But here they pasted it to the front door without following the rule that anyone was home, that it was a person who lived with the defendant, and that it was a person of suitable age. You know, the trial court relied upon an old statute that has been abolished for 10 years. So no one defends the trial court's reasoning on that part of it. But the opposing counsel tries to argue where pasting to a front door is close enough to handing to the wife if you pretend he used to live there, and there's no case. But we know the wife got it because she mailed it back to the lawyer. Right. Right. I mean, it's not like it was nailed to or glued to the front door and blew away. It was glued to the front door, and she got it. And if there was a rule that says if your wife knows about it, that's enough, I wouldn't be having an argument today. But the rules say that you have to have service, and that notice is not enough. That's what this court held in the McGuire v. Sigma case, 48F 3rd, 902. Okay. Thank you. Thank you, Your Honor. You've saved time for both. Thank you, Your Honor. Mr. Fagan. Where would you like me to begin? Your argument. Is that fresh? Did Gary with a G participate in this case? Gary with a G did not participate in this case directly, Your Honor. He did not. And since we're going on the service issues, I'll address those arguments first. But what the testimony says, and there were several times when Kerry Causey was questioned during trial, does your brother know about this lawsuit? Essentially the answer is yes, he's aware of this lawsuit. And as to the service, it's not like this is the first time and only time that we attempted to make service, that the process server attempted to make service. The record shows through the affidavits that we filed that we first tried to serve him in New Mexico. Then we went to Colorado, and I think that we tried to serve him seven or eight times at that Denver address that they gave us. No success. Never there. The gentleman's a flight attendant. He's based out of Denver. Okay, but then, I mean, I did this as a trial judge a lot. I was a state trial judge, and we had a lot of people that were hard to serve. And there was a very specific process that people went through. They didn't just do self-help. They had me order something, and then that order had to be exactly followed, and then that was good enough. And to the point that sometimes we allowed service by publication even, which, you know, how many people are reading the back page of XYZ newspaper? But that would be authorized. But I didn't allow lawyers to do self-help, and I didn't grant default judgments based on self-help. So the fact that this is hard and frustrating and you're really irritated with somebody who's a peripatetic potential defendant because he's never around doesn't justify completely just making something up and saying, well, good enough to post it on the door when that isn't allowed or isn't provided for by the particular rules. Well, I don't agree that it's not allowed or provided for. We did cite a series of cases that talk. This is not a game of hide-and-seek, and the courts have recognized that service is not a game of hide-and-seek. And all we have to do is to make good faith, reasonable efforts to affect service, to give notice. See, I don't agree with that. I don't think that you can just say I made good faith efforts and that's enough. The good faith efforts and the actual notice all relate to construing whether the rule was followed. And you haven't pointed me to a rule that allows simply posting on the door at a time when the process server doesn't say someone's home. It's not like you're holding your hands close to your heart and I drop it at your feet and you go, oh, I didn't get it, I didn't get it. That is a different case. Or even if I'm standing at the door shouting, the shouting incident was a different day than the posting incident. And so I think those two have to be together. I think they are the same date, actually. Well, what evidence is there of the same date? There is evidence that when they went back to New Mexico that there was an attempt to serve. The door was answered by the son. The son opened the door. The son said, he was asked, does your dad live here? And yes, he lives here. He's not home right now. So there was an effort to go back. And then when the process server went back, that's when the process server, that's when the wife was behind the door, he doesn't live here, that's when it was posted on the door. But that's not what the process server says. I mean, he doesn't put those as the same day, because to me that's a really important. And the other thing is these process servers know this stuff. They need to be clear. And when they're not clear, I think you can say, I mean, there's doubt about that. I don't think the district court found that that day she was home. The court's holding on that point is not that precise in terms of the factual finding. I don't think it needed to be, because the point of what we did, and the Espinosa case is the source of the case law that I cited about, that I referenced. The Supreme Court's decision in Espinosa is the source of the authority for the good-faith efforts to effect service. Yeah, but the good-faith efforts by themselves aren't enough. I'm not saying they're irrelevant, but that isn't enough. It's not enough. If I go to your house three times and you're not there and I go, well, I tried, so I'll just leave it on the door, that isn't going to cut it. We've cited a dozen cases, I believe, in the combined briefs that we have presented, where there were circumstances similar to this, where there was physical service not made. And I don't think I submit it makes a difference if you have somebody where the service is dropped and they won't take it by hand or they won't open the door. I don't think that there is a real difference there substantively. The fact is the service was refused, and the process server announced why she was there, said I'm here to serve a summons, and was refused. In that instance, whether you drop it at the door, drop it outside, post it on the door, that is the effecting summons. If you can show that the two were the same day or the same moment, I don't know that that's been shown. That's my concern. I didn't look at the affidavits granularly enough to tell you one way or another on argument, so I can't. My belief is that they were the same day, but I can't tell you that with 100% assurance. How do you address this fact that the district court didn't make an express finding that Gary lived there? I think he did. The record that I would refer to is the 30942 portions of the Court of Appeal record, pages 1207 through 1209. Actually, he goes through quite a detail. The whole section in his order and reasons is very lengthy about why he determines that there was a residence there. I think what's important here to Judge Haynes and the court is that there is no statement ever by Gary Causey to the effect that counsel made that I don't live here. It says I reside in Denver. It doesn't say I don't reside in Albuquerque. It doesn't say I'm separated from my wife, and it doesn't say I never got notice or actual notice of this lawsuit. All the indicia are that he did get actual notice of this lawsuit. And not only that, the other indicia of notices, Your Honor, is that, and I even wrote a letter to the district court about protesting against this, but after the entry of the default in March of 2015, every single pleading in this case was sent by mail to the Albuquerque address. And the evidence I submit in that circumstance is overwhelming that that's at least one of his usual abodes. That's a fact finding that cannot be overcome because of the multitude of evidence that we submitted from many different sources, including declarations that he's not. I mean, this seems like these two people have a very complicated, the husband and wife here, and so I'm having a little trouble with just sending, keep sending stuff to Albuquerque when the man lives in Denver, relying on a, I don't know, on again, off again relationship. We don't know. Right, we don't know. That's all speculative, Your Honor. What we do know is they were married. Nobody said they weren't married. They both listed Albuquerque as the address. It's on his tax returns. It's on his W-2s. He lists his property. He lists himself as the head of household in the Bernardino County records in New Mexico. I mean, there's ten different indicia of that. It's Kelly's testimony, his W-2s, the Bernardino tax records. He filed a lawsuit. There was a lawsuit filed against him in New Orleans where he's alleged to have lived in New Mexico in 2012. His lawyer signs the pretrial order in September of 2012 saying he's domiciled. I asked you if he participated. I'm sorry. In the trial, he did not participate, Your Honor. This was a different case. Well, I don't mean come to court. I mean, did he participate in the course of this proceeding? Not at all, Your Honor. Did he respond to what was sent to Vancouver? Not until the rule 60B motion was filed after the appeal delays had expired. The lawsuit you're talking about with the lawyer is a different lawsuit, right? Oh, I'm sorry. I think that's what's confusing. The Dewgast lawsuit, yes, he did participate in that lawsuit. But that was a different one than this one. The Dewgast lawsuit, he appeared through counsel. There was another similar lawsuit brought in Louisiana similar to this one called Dewgast. Where was he residing then? Well, he said New Mexico, and that was 2012 and 2013. Remember, Mr. Gary Causey's affidavit says he moved to Denver in April 2010. But we have proof, solid proof, after that date of at least eight different instances where his domicile is shown or his residence or his bode, whatever you want to call it, is shown in New Mexico. That's what the overwhelming proof is. And that's why I think the court can find everything about whether they were married or the state of their marriage or whether they enjoyed whatever kind of relationship is all speculated. The facts are, all of the facts show that he lived there. And we were entitled to rely on that. There's no evidence that we were trying to go sneak one by these guys. We were trying to serve this guy diligently. And when we got him at his domicile, I was satisfied as counsel. The service to his wife, having it come back, posted to the door, the fact that she refused the service, to me, that was effective service. Even if that wasn't the same day? Even if it wasn't the same day, because I think there have been repeated efforts. And you think the cases you cited support that? There are a dozen cases. Which is your best case that supports that proposition, that if the shouting through the door was a separate day from the posting on the door, and on the posting on the door day there was no shouting or anything else, that that's still effective service? I know the guy. I can't even think of his last name right now. It's a guy in New Orleans. My wife's here. She can tell me, but I can't ask her. There's an Eastern District case of Louisiana where there was a similar service. It was involved in a broker-dealer case, and I just can't recall the name of either party. So that's the Eastern District of Louisiana case is your best case. I think so. And that's the close Conwell. Conwell, C-O-N-W-I-L-L case is very similar, and there's a handful of others just like that where you have attempts to evade service. So I think on a service issue, we did, and it is the fairness, and it's the due process. That's what you look at ultimately is was there a due process. And I believe that under the circumstances, if this gentleman, Gary Causey, believed, and I submit to the court, that if he had an issue with the service, it was incumbent upon him to file something because there was no— He did. He filed a Rule 60 within 90 days of the final judgment. Now, you keep trying to go back to the day of the entry of default, but there was no final judgment until—I guess the amended final judgment was March of 2016. He filed the Rule 60 in June of 2016. That's a whole lot more responsive than a lot of people I've seen over the years. Well, he did not—he waited a year and three months, four months, before doing anything at all. But there was no amended—I mean, frankly, at the trial, if the judge had found there was never a joint venture, there was never an agreement, he couldn't have entered a final judgment of default. So even when you default, if the evidence at trial shows that you try some other defendant, it shows something completely different, the judge could have said, I don't think there's—I mean, I think the Norrises are lying to me, et cetera, et cetera. I'm not saying that that happened. I'm saying the judge could have said that and wouldn't have entered a final judgment. There would have been nothing for Gary to challenge. If he'd won, there would be nothing for him to move to set aside. Until a final judgment's entered, you, the party that was improperly served, in your view, or not served, doesn't have anything to challenge. Yeah, I don't agree with that. I think that upon the time that you have notice of the service, even if you allege it's improper service, and I believe—there are cases that talk about it. You can't wait on your heels. Oh, you can file a 12b-5 challenging improper service. I'm sorry if I wasn't clear. That's a pretrial motion. But you were challenging his Rule 60 motion. A Rule 60b-4 saying a judgment is void, in my view, can't be filed until there's a judgment to void. Maybe that's too—maybe I'm wrong and that's too simple, but that's how I see it. There are two parts to the question. Okay. Was it a reasonable time? Was the Rule 60b motion filed within a reasonable time for him to challenge the entry of the partial final judgment? I don't think so because it is just seeking relief from a judgment, and the cornerstone of the ultimate default judgment, the first part of it, was the first service on him, which was the entry of default. The confirmation of the default was simply a second step. So there's two months. I don't even think it's a reasonable time for him to have waited until after the appeal delays had run to file his motion. If he gets an amended notice of judgment, which he obviously did because he ultimately appeared, and the court is mailing everything to him at this address in Albuquerque, he waits another three months. He doesn't appeal. He doesn't file a Rule 59 motion. He waits to file a Rule 60 motion in order to, what I think is going on, is to get around, do an end run on an appeal because he failed to timely appear and because he failed to timely file post-trial motions where he could have challenged judgment. He failed to do anything at all until Rule 60b. And I just don't, I submit to the court that that's not the way the rules are meant to operate. It's not a game of hide and seek. It's not a game of wait and see. It's a game, it's a process that he, it was incumbent upon him within 20 days. I'm going to shift you to Kerry because you're otherwise going to run out of time. Oh, yes, I'm sorry. And no, I mean, totally, you're responding to our questions. I jumped to five minutes. Yeah, time flies when you're having fun. So on Kerry, I wanted to ask about attorney's fees. Assuming arguendo that the district court ruling on the breach of contract will be affirmed and assuming arguendo the amount, which I know you're challenging, is affirmed. I'm not challenging. I'm sorry, I thought you were challenging the amount that Kerry, that was awarded against Kerry. You said it should be solidary with Kerry. And that's a significant difference to Kerry. And you're also challenging the absence of lost profits. So, yes, you are challenging the amount. But assuming arguendo that we were to affirm that, then we get to the attorney's fees. Shouldn't the attorney's fees be limited to the reasonable and necessary fees to pursue that amount, that breach against Kerry, not fiduciary duty, which you lost on, not unjust enrichment, which you lost on, not running around trying to find Gary or any of that, just that group? And were they so segregated? So that's my question. I don't think the operative facts were all the same or similar. So the answer to your question is no, I don't think so, because the core operative facts were all essentially the same in terms of what we were claiming. The theories of recovery are different. So I think that what we ultimately prevailed on and how we prevailed is not dispositive of the recovery because we still had to prove the underlying facts, which were the same. And did you segregate out the time spent on Gary? I think we did. But that's the one with the district. Where would I find that in the record? The district court held that Gary and Kerry were solidarily liable for the attorney's fees. That's what I thought you were first asking about. But I believe that we did segregate out how much was incurred. Where would I find the records? I can write the court and give you the record site. Top of my mind, we did calculate the service cost and the process and things like that and the estimated cost for serving the appeal. We did do that. It wasn't appealed, as I appreciated. I think the court's bringing up some of these issues for the first time. Not that you can't. You have the right to do that. Okay. I mean, Kerry directly challenged the amount of the attorney's fees. I'm not making this up. I mean, there's a lot of briefs to read, and it's a very confusing way that you all handled this. But I did get that out of it. I don't think he challenged the theories of recovery and prevailing because there was no opposition to that filed at the district court level. That's what's confusing to me. The other side did not do anything to oppose our motion for attorney's fees, so I don't think you can do that on the first time on appeal. That's a different question. He did challenge it on appeal. Yeah, but it was not challenged. There was a prior counsel for them, and it was not challenged. Now, we don't have a lot of time. He'll ask a lot of questions, Mr. Richardson, on the jurisdiction issues, and I do not believe, Judge Costa, that the $1,000 is anything that Norris has provided. It's plain on the sheet. Well, one thing it could be, there's that $1,000 architectural fee, so I was wondering if they just disclosed that and not the broader lawsuit. It's not that. If you look at the code itself and if you look at any of the forms, I'm sorry, I have to take off my glasses. The record in 30942 at 1175 is an example of one of the forms. Form 1, you can see each one of these. There's a column at the top that says estimated net value, value determined by trustee less liens, exemptions, and other costs. So the value, the $1,000 value that appeared in that column was by the trustee. It's the trustee's duty to make that valuation. Right, and we don't know what. I mean, the trustee usually meets with the debtor and talks to them about it. We don't know what transpired that led to that. The original trustee is dead. The bankruptcy attorney for the Norris' is dead. I don't have anybody I can ask those questions, which begs the question. Well, except your clients. Well, my client's recollection is not. I mean, I have a client who's a plumber and I have a client who's a housewife, and they are not versed in bankruptcy law, so they are not. I don't think you have to be versed in bankruptcy law to remember what you told anybody about this big claim that you're so upset you were defrauded on. I believe their testimony was that they didn't really know the value of the claim, and that's what their testimony at trial was. Now, what they couldn't recall is exactly when and what they told to the trustee along those lines. They did testify that they always believed that there was little value or an unknown value because they didn't know if the causes could pay, if they could ever recover anything from this amount because the money just disappeared. On the bigger issue of the jurisdiction question, the other point I wanted to make on the few things, the effect of the bankruptcy reopening, none. The Ministerial Act cases we cited are all in that. It has no effect. There's been no move by the bankruptcy court to do anything. I think with respect to the, it's the finality that's the focus of the abandonment. And the district court decided that the bankruptcy court did not have the right to abandon the assets. That is directly. What about the judicial estoppel argument? The judicial estoppel argument being? Being that a plaintiff who, let's assume arguendo, fails to disclose something in their schedules in a bankruptcy court, as against a wrongdoing, allegedly wrongdoing, tortfeasor, the plaintiff still loses. There's simply no evidence of that. If there was facts about that, it's way too late to do that on a Rule 60B motion after a trial. And the finality of this judgment, I agree with Judge Costa, I believe you were the one that remarked, how can a Louisiana court attack the finality? This is the way I would phrase it. How can a Louisiana court attack the finality of the abandonment by a Michigan bankruptcy court? I don't think you can. That's not what the courts are empowered to do. Now, should this court punt that question and wait to the Michigan bankruptcy court? I'd ask that you not do so because I think that this court can decide, as it should, that the abandonment was final. And it is what it is. And nobody ever timely filed something. There were five different final reports in this case, three different reports, a final report, a final account, notice and opportunity to be heard. Nobody objected. It's a final judgment. It's done. It was abandoned. And whether it was wrong or right, it was still abandoned. Thank you, Your Honor. Thank you, Counselor. I appreciate it. All right. Mr. Higgins, you have three whole minutes. Thank you, Your Honor. I'll try to address two of the issues that apply to Kerry that were discussed by opposing counsel. On the issue of this $1,000, once again, I mean, the plaintiffs, the Norse, are going to be in the best position to know where that came from. And their testimony that they just can't remember, they don't know where that came from, is not credible. I mean, they knew enough to go to a district attorney and file a complaint. And they also knew – It's beside credibility, though. Yes, Your Honor. My point is they also went to an attorney and filed a lawsuit, and they knew the value of the claim was the amount of the checks that were issued. And furthermore, the fact that they didn't list – There was no discovery. I mean, normally you'd be able to take discovery and say, what did you tell the trustee that led to this $1,000? I mean, that's how you could bring in a stop log with evidence that they misled the bankruptcy court. But where is that in this record? In this action?  Well, Your Honor, I substituted as counsel when the motion for relief was filed. I don't believe – I'm not blaming you for what didn't happen, but I want to know what did happen. Is there anything in the record that this alleged misrepresentation was investigated during discovery in this case that can show us how it happened? I don't believe so, and I think that's part of the reason why Judicial Estoppel – I don't think that anyone fully appreciated the significance of the bankruptcy proceeding and what had actually occurred and the fact that this hadn't been fully disclosed until later, until it was looked into by counsel for Gary. Do you normally have to bring arguments during the trial? I had a Judicial Estoppel opinion. It issued Friday, and it was litigated even before trial in a Rule 12 and then a summary judgment motion. It's an equitable doctrine that can be invoked at the court's discretion. So, I mean, I do believe that this court, even if it was not – Do you think it voids a judgment? That's the standard you have to meet. Do you think it voids a judgment? Well, Judge Barbier said not that it voids a judgment, that the trustee can be substituted as the real party in interest. And, I mean, there's a big question. But not on Estoppel grounds. I thought you were talking about Estoppel. Okay. Has the trustee made any effort to come in here to this case in any way? Despite my encouraging the counsel for the trustee to do so, no, I think they'd actually prefer to sit back and let everybody litigate these issues without having to incur any attorney's fees, and that's kind of made things – And then come in and help themselves to the outcome? Right, and that's kind of made things more complicated. So everybody will be unhappy at the end of this case if we affirm. Well, that's why we've argued that Kerry did not accept the contract. And just briefly on the attorney's fee issue there, there's a motion for attorney's fees. It's part of the record. It's in my record excerpts, I believe, at tab 8. And there was no effort to separate out who would what. That was a full amount of attorney's fees and costs in the case. I mean, it was $56,000 plus costs. And you can see in that motion the argument for why Kerry was solidarily liable is because he didn't attempt to settle the case with them, and they were forced to try the case, and because Gary, you know, was not served and didn't participate – I'm sorry, Gary did not participate in the lawsuit and was found liable. But like you brought up, Judge Haynes, I mean, it's not equitable to find Kerry responsible for the full amount of attorney's fees, especially with all the work that was done relating to service. And also when you look at the fact that the only way he was found liable was because some funds were transferred to his account, and he never agreed to the terms of the JBA itself. I'm sorry. I know it's hard, the time limits, but they are what they are. I appreciate it, Your Honor. Thank you very much. All right. Mr. Richardson, close us out here with your big three minutes. Okay. Your Honor, you asked very specific questions about what the record showed, and my opponent, I'm sure unintentionally, made three errors about what the record says. He said that Gary only said he resided in Denver, not that he didn't reside in New Mexico. Paragraph 8 of his affidavit says, Since April 2010 to the present, I have not resided in Albuquerque. And there's nothing in the record that contradicts that. No other affidavits. Second of all, and I think Your Honor figured out this one, that the time when there was a knock on the door and the wife says, I'm not there, was not the same time that the notice was posted to the front door. The affidavit from the process server in paragraph 8 says, The wife yelled through the door. And in paragraph 9 says, Subsequently. So like another time that the process server went there, they posted to the front door. And finally, opposing counsel said that there were eight times that there was an attempt to serve at his condo. That's actually not what the affidavit said. It just says multiple times. But aside from those misstatements, you asked a very good question, which was, What's the closest case you have to knocking on the door and hearing shouting through the door one day and coming back another day to post? And opposing counsel said that it's the Conwell case. But that case has nothing to do with the facts here. The issue in that case was, Did they serve someone who lived with the defendant? And the defendant argued, The woman that you served was not my wife. It was the nanny who doesn't live there. And the trial court found, as a matter of fact, he was lying. The trial court said the affidavit from the process server, which was a detailed affidavit, as Your Honor referred to, it was clearly the wife that was served. And he was just making up. But in that case, you had papers handed to someone. Here, if you were to affirm in this case, that would mean when you post to the front door, how do you tell whether it was the nanny or the wife or anyone who got the service? You can't tell. Not to mention, you could never tell if the person was of suitable age. So it would be completely unworkable to have a rule to assume How old was the son who answered the door the one time? That's not in the record. I can tell you he was in his 20s. But we don't know that. He may not have understood the relationship, but it's not in the record. Judge Rievele, just to be clear, you asked, Did Gary participate in the underlying trial? No. Period. He did not. There's no evidence of that. So the first time we see Gary is in June of 2016, filing a 60 v. 4. Rule 60 motion. The references to Gary's lawyer are a totally different case. Absolutely. Absolutely. So with that, with a few seconds left, I think that answers the outstanding questions. You're going to give us back our 25 seconds. Much appreciated. Thank you. All right. Thank you, counsel. Very spirited exchange, and we appreciate it very much.